Jeffrey J. Hunt (5855) (jhunt@parrbrown.com)
David C. Reymann (8495) (dreymann@parrbrown.com)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

Attorneys for Proposed Intervenors the Utah Headliners
Chapter of the Society of Professional Journalists, the
Associated Press, the *Deseret News*, *The Salt Lake
Tribune,* KSL-TV, KSL Newsradio, KSL.com, ABC4,
KUTV, and Fox 13 KSTU-TV

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| MAVENI ANGILAU; OTUFANGAVALU ANGILAU; and the ESTATE OF SIALE ANGILAU,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA; JANE DOE, a U.S. Marshal; and JOHN & SALLY DOES 2-10,<br><br>Defendants. | **MEDIA INTERVENORS' OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE A VIDEO IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT UNDER SEAL**<br><br>Case No. 2:16-cv-992-DME-CBS<br><br>Judge David M. Ebel<br><br>Magistrate Judge Craig B. Shaffer |

Proposed Intervenors the Utah Headliners Chapter of the Society of Professional Journalists, the Associated Press, the *Deseret News*, *The Salt Lake Tribune,* KSL-TV, KSL Newsradio, KSL.com, ABC4, KUTV, and Fox 13 KSTU-TV (collectively, the "Media Intervenors") respectfully submit this Opposition to the Motion for Leave to File a Video In

Support of the United States' Motion to Dismiss or in the Alternative Motion for Summary Judgment Under Seal (Dkt. 12) ("Motion to Seal") filed by Defendant the United States of America ("Defendant"). In the event the video at issue has already been filed under seal by the time this submission is considered, this filing shall constitute a notification to Defendant of improper filing under seal pursuant to DUCivR 5-2(e)(4)(B).

## INTRODUCTION

This is a case of substantial public interest. Not only does it involve the use of lethal force by law enforcement officers, which alone situates it amidst a critical national dialogue regarding excessive force, but also those events took place in a public courtroom during a public trial—extraordinary circumstances that underscore the need for public accountability of those involved. It has been nearly three years since these events took place, with multiple conflicting accounts given of what went on, yet the public has yet to see the security video documenting the shooting of Mr. Angilau.

What transpires in public courtrooms is the public's property. Since the founding of this country, the public has played a critical role in the judicial process, both in ensuring transparency and holding public servants accountable for the discharge of their duties. The public's right of access, both to court proceedings and to documents filed with the court, has a time-honored history rooted in both the First Amendment and the common law. That right is not easily cast aside, particularly when the matters at issue go to the heart of the proceeding before the court. Secret trials are anathema to the values undergirding the judicial system.

It is against this backdrop that Defendant has asked this Court for the exceptional remedy of filing the video at issue under seal. Even more troubling, this request is not based on some

tangential discovery motion or a non-dispositive motion to determine privilege status. It is made in connection with Defendant's upcoming *dispositive motion* seeking dismissal of the claims that law enforcement officers used excessive lethal force. Should the request be granted, it may mean that this entire case—including all of the urgent issues it raises—will decided behind closed doors.

Perhaps there are some rare circumstances where the public's right of access can properly be sacrificed despite the critical nature of the evidence at issue. But that is not this case. The generalized and speculative assertions offered by Defendant here fall far short of the particularized showing necessary to overcome the presumption of openness and would be true of virtually any court security video depicting an emergency response. The Tenth Circuit has wisely rejected such categorical assertions of secrecy as insufficiently protective of the public's right of access, and they should fare no better here. To the extent there are legitimate security concerns regarding the identities of the Marshals involved in the shooting, those concerns can be fully addressed by the less restrictive alternative of pixilating their faces. Defendant's attempt to withhold the entire video based on diffuse concerns about revealing security protocols are unjustified by the facts and insufficient to carry Defendant's heavy burden.

Parties are not entitled to a secret adjudication of their rights. Part and parcel of Defendant's decision to submit the video to the Court, and to use it in support of its dismissal request, is that the video will become part of the public record. Nothing in Defendant's motion warrants departing from the long history of granting the public meaningful access to court proceedings and records when they impact the litigants' substantive rights. Defendant's motion should accordingly be denied.

# ARGUMENT

## I. THE PUBLIC HAS A PRESUMPTIVE RIGHT OF ACCESS TO DOCUMENTS FILED WITH THE COURT.

Unlike ordinary discovery materials, which is what most of Defendant's cases discuss, when documents are filed with the Court, they become presumptively public and subject to a robust right of access. This right is grounded both in the First Amendment and in federal common law.

### A. The Public Has a Constitutional Right of Access to Court Records.

The United States Supreme Court has long held that the public and the press enjoy a presumptive constitutional right of access to judicial proceedings. That Court and the Utah Supreme Court have affirmed this constitutional right of access in a variety of contexts. *See, e.g., Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S. Ct. 2735 (1986) ("*Press-Enterprise II*") (preliminary hearings); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S. Ct. 819 (1984) ("*Press-Enterprise I*") (criminal voir dire proceedings); *Waller v. Georgia,* 467 U.S. 39, 104 S. Ct. 2210 (1984) (applying First Amendment open courts analysis to pretrial suppression hearing); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S. Ct. 2613 (1982) (criminal trial involving child victim of rape); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S. Ct. 2814 (1980) (criminal trial); *Soc'y of Prof'l Journalists v. Bullock*, 743 P.2d 1166 (Utah 1987) (upholding First Amendment right of access to competency hearing); *Kearns-Tribune v. Lewis*, 685 P.2d 515 (Utah 1984) (preliminary hearings); *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*, 980 P.2d 337 (Cal. 1999) (recognizing parallel constitutional right of access to civil proceedings).

This right of access has a time-honored history, rooted in the acknowledgement that the open court fosters and protects important societal values. It enhances the quality and safeguards the integrity of the fact-finding process, *Globe Newspaper Co.*, 102 S. Ct. at 2619, enhances basic fairness and the appearance of fairness in the proceedings, *Press-Enterprise II*, 106 S. Ct. at 2743, fosters public confidence in the judicial process and acceptance of its results, *Press-Enterprise I*, 104 S. Ct. at 822, acts as a check on the judiciary, *Richmond Newspapers*, 100 S. Ct. at 2823, and allows the public to participate in government. *Id.* at 2833 (Brennan, J., concurring). Although members of the public may not attend judicial proceedings in large numbers, the news media acts as the public's surrogate in attending such proceedings and reporting to the public, thus educating the public. *Id.* at 2825.

Conversely, denying public access to judicial proceedings or documents precludes public scrutiny of the judicial process, creating an impression of unfairness and secrecy, even though the proceedings may in fact be imminently fair. *See* M. Fowler & D. Leit, *Media Access to the Courts: The Current Status of the Law* (American Bar Association, Section of Litigation 1995) at 1; *see also Soc'y of Prof'l Journalists v. Sec'y of Labor*, 616 F. Supp. 569, 576 (D. Utah 1985) (Winder, J.) ("Openness safeguards our democratic institutions. Secrecy breeds mistrust and abuse."), *appeal dismissed and remanded on other grounds*, 832 F.2d 1180 (10th Cir. 1987).

In assessing whether a constitutional right of access exists, the United States Supreme Court has "emphasized two complementary considerations," *Press-Enterprise II*, 478 U.S. at 8, in what has come to be known as the "experience and logic" test. First, the court considers "whether the place and process have historically been open to the press and general public." *Id.* Second, the court considers "whether public access plays a significant positive role in the

functioning of the particular process in question." *Id.* If these considerations of experience and logic weigh in favor of public access, then a constitutional right of access exists that may be overcome only in the most exceptional circumstances.

Neither the United States Supreme Court nor the Tenth Circuit has yet addressed whether the *Press-Enterprise* constitutional right of access to proceedings also applies to court records. *See Colony Ins. v. Burke*, 698 F.3d 1222, 1241 n.27 (10th Cir. 2012). Although it is an open question for now, the Tenth Circuit has assumed that such a constitutional right exists when analyzing questions of records access. *See*, *e.g.*, *United States v. McVeigh*, 119 F.3d 806, 811-12 (10th Cir. 1997). That approach is not surprising, since virtually every other Circuit, the courts of this District, and the state courts of Utah have all held that there is a First Amendment right of access to court records. *See, e.g., Globe Newspaper Co. v. Pokaski,* 868 F.2d 497, 502 (1st Cir. 1989) (there is a "First Amendment right of access to records submitted in connection with criminal proceedings"); *In re New York Times Co.,* 828 F.2d 110, 115 (2d Cir. 1987) ("a qualified First Amendment right of access extends to such documents"); *United States v. Smith,* 776 F.2d 1104, 1112 (3d Cir. 1985) ("no reason occurs to us why [the *Press-Enterprise II*] analysis does not apply as well to judicial documents"); *In re Washington Post. Co.,* 807 F.2d 383, 389 (4th Cir. 1986) ("the First Amendment right of access applies to documents filed in connection with [hearings]"); *Applications of Nat'l Broadcasting Co.,* 828 F.2d 340, 343 (6th Cir. 1987) (applying *Press-Enterprise II* test to hold that "there is a qualified right of access to documents and records that pertain to [the proceeding in question]"); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) ("this presumption is of constitutional magnitude"); *In re Search Warrant for Secretarial Area Outside Office of Gunn,* 855 F.2d 569, 573 (8th Cir. 1988)

("the first amendment right of access does extend to the documents filed in support of search warrant applications"); *Associated Press v. United States Dist. Ct.,* 705 F.2d 1143, 1145 (9th Cir. 1983) ("There is no reason to distinguish between pretrial proceedings and the documents filed in regard to them."); *United States v. El-Sayegh,* 131 F.3d 158, 160 (D.C. Cir. 1997) ("The First Amendment guarantees the press and the public access to aspects of court proceedings, including documents"); *Soc'y of Prof'l Journalists v. Briggs*, 675 F. Supp. 1308, 1310 (D. Utah 1987) ("This court agrees and holds that there is a constitutional right of access to public documents."); *State v. Archuleta*, 857 P.2d 234 (Utah 1993) (First Amendment right of access to court records filed in connection with preliminary hearing).

Both prongs of the *Press-Enterprise* test—experience and logic—apply with equal force to the public's right of access to judicial documents. With respect to experience, "[p]ublic access to court documents traces its roots back centuries through the common law, stemming from the practice of open trials." *Rosado v. Bridgeport Roman Catholic Diocesan Corp.,* 970 A.2d 656, 676 (Conn. 2009). "The existence of this right, which antedates the Constitution and which is applicable in both criminal and civil cases, is now 'beyond dispute.'" *Leucadia, Inc. v. Applied Extrusion Tech., Inc.,* 998 F.2d 157, 161 (3d Cir. 1993) (citation omitted). *See also Ex Parte Consol. Publ'g Co., Inc.,* 601 So.2d 423, *28-29 (Ala. 1992) ("judicial records and documents have historically been open to the press and public").

With respect to logic, "[t]he same considerations as to the positive role in the function of the process … apply to the court file." *Id.* at *30. "Public monitoring of the judicial process through open court proceedings and records enhances confidence in the judicial system by ensuring that justice is administered equitably and in accordance with established procedures."

*Rosado,* 970 A.2d at 676. As the Utah Supreme Court articulated in *Archuleta,* this application of the constitutional right to judicial records recognizes the obvious importance of court records and their function in helping the public understand and scrutinize the judicial process. To draw a distinction between records and hearings, particularly one of constitutional importance, defies common sense:

> We see no reason to distinguish between access to a preliminary hearing and the documents filed in related to that hearing. As one scholar has noted, "***Access to pretrial documents furthers the same societal needs served by open trials and pretrial civil and criminal proceedings. . . . The availability of documents means that graft and ignorance will be more difficult to conceal***." Disclosing documents used by courts in reaching a decision in a preliminary hearing will discourage decisions based on improper means and will promote conscientious performance by all officials involved in the criminal justice system. Therefore, providing a presumptive right of access to documents filed in connection with preliminary hearings can play a significant positive role in the functioning of that process.

*Archuleta*, 857 P.2d at 238-39 (citation omitted; ellipses in original; emphasis added).

In light of this virtual consensus, when the Tenth Circuit or the United States Supreme Court eventually address this issue, they almost certainly will conclude the same. In any event, this Court would not be breaking any new ground in recognizing that constitutional right in this case.

In order to overcome the public's constitutional right of access, Defendant bears a particularly heavy burden. The right can be overcome only if Defendant establishes a "substantial probability" that public access will endanger a compelling governmental interest, and that there are no less restrictive alternatives to blanket closure that will protect that interest. *Press-Enterprise II*, 478 U.S. at 14. This showing cannot be made by speculation or generalized assertions. Rather, "It is only upon the showing of some ***specific circumstance*** that gives rise to ***significant probability*** of prejudice to the proceeding that the courts are inclined to close the

courtroom and seal the records." *People v. DeBeer*, 774 N.Y.S.2d 314, 315 (N.Y. Cty. Ct. 2004) (emphasis added); *see also State v. Cianci*, 496 A.2d 139, 145 (R.I. 1985) ("blanket statement of potential prejudice was not sufficient to demonstrate compelling reasons for ordering the sealing of discovery documents").

### B. The Public Has a Common Law Right of Access to Court Records.

Even if this Court were to assume the constitutional right of access does not extend to documents, "[c]ourts have long recognized a common-law right of access to judicial records." *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (quoting *Colony Ins.*, 698 F.3d at 1241). "'The right is an important aspect of the overriding concern with preserving the integrity of the law enforcement and judicial processes.'" *United States v. Apperson*, 642 F. App'x 892, 899 (10th Cir. 2016) (quoting *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985)). "Although this 'right is not absolute,' there is a 'strong presumption in favor of public access.'" *Pickard*, 733 F.3d at 1302 (citations omitted). "The presumption in favor of access is particularly strong, as here, 'where the district court used the sealed documents 'to determine litigants' substantive legal rights.'" *Apperson*, 642 F. App'x at 899 (quoting *Pickard*, 733 F.3d at 1302) (further citation omitted).

This common law right of access is also embodied in the Rules of Practice of this Court, which affirm that "[t]he records of the court are presumptively open to the public," that counsel should "be highly selective in filing documents under seal," and that proper sealing of documents should be "rare." DUCivR 5-2(a).

In deciding whether such rare circumstances exist to justify sealing the court file, this Court "must 'weigh the interests of the public, which are presumptively paramount, against those

advanced by the parties.'" *Pickard*, 733 F.3d at 1302 (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)). "Consistent with this presumption that judicial records should be open to the public, the party seeking to keep records sealed bears the burden of justifying that secrecy[.]" *Id*. It is only where the proponent of secrecy has "show[n] some significant interest" favoring closure that "'heavily outweigh[s] the public interests in access' to the judicial records" that sealing is warranted. *Id*. (citations omitted). Thus, even though the common law right of access is somewhat less protective than the constitutional right, "[r]egardless of whether the right of access arises from the First Amendment or the common law, it may be abrogated only in *unusual circumstances*." *United States v. Morgan,* No. 5:06-cr-164-02, 2008 U.S. Dist. LEXIS 34949, *6 (S.D. W.Va. Apr. 28, 2008) (citation omitted).

## II. DEFENDANT HAS NOT OVERCOME THE HEAVY PRESUMPTION IN FAVOR OF PUBLIC ACCESS.

Defendant makes two arguments in support of its request to file the video at issue under seal. First, it argues that secrecy is necessary to protect individuals depicted in the video, including the Marshal who shot Angilau, other Marshals in the room, the judge, and the witness who was testifying at the time, from retaliation. Second, Defendant argues that the video is protected from release by the "law enforcement privilege." Neither argument is well taken.

### A. Defendant's Retaliation Concerns Are Either Unfounded or Can Be Addressed By Pixilation.

Defendant cites a number of cases that allow for sealing of documents to protect the identity of confidential informants. Defendant implies that these cases apply here because the witness who was testifying against Angilau at the time Angilau was shot was an informant. But that argument makes no sense because the identity of the testifying witness is not a secret. His

name and background were published multiple times in accounts of the shooting and are now part of the public domain.[1]

The same is true of Defendant's unexplained assertion that the judge in the proceeding was given a week-long security detail after the incident. The judge's identity is likewise not a secret and was similarly published in the public domain.[2] And the names of the Assistant United States Attorneys on the case are readily available on the public docket. For obvious reasons, there is no compelling interest in sealing documents to protect information that is already in the public domain. *See Pickard*, 733 F.3d at 1305 ("The fact that some of the sealed information has already been made public suggests that much of the information in the DEA records could be unsealed.").

Defendant's only plausible argument is that the identities of the Marshals and jurors would be revealed by the video. Defendant assumes, but does not submit any evidence, that the identities of the Marshals involved, who are present in public courtrooms every day, have not already become publicly known.[3] But even if their identities were a secret, and even if

---

[1] *See*, *e.g.*, "Gang defendant shot, killed at new Salt Lake City federal courthouse," *Salt Lake Tribune*, April 22, 2014, http://archive.sltrib.com/story.php?ref=/sltrib/news/57844841-78/angilau-witness-cardwell-defendant.html.csp; "Man killed in court had tried to prevent witness with 'personal bias' from testifying," *Deseret News*, April 22, 2014, http://www.deseretnews.com/article/865601552/Man-killed-in-court-had-tried-to-prevent-witness-with-personal-bias-from-testifying.html?pg=all; "Parents see video of defendant shot to death in Utah courtroom," *Salt Lake Tribune*, May 21, 2015, http://www.sltrib.com/news/2533962-155/parents-see-video-of-defendant-shot?page=2.
[2] *Id.*
[3] As to Defendant's passing reference to "privacy," if that is intended to apply to the Marshals, it is without merit. *See Johnson v. Hawe*, 388 F.3d 676, 683 (9th Cir. 2004) (police officer has no legitimate expectation of privacy in his conduct "while he was on duty performing an official function in a public place"); *Rawlins v. Hutchinson Publ'g Co.*, 543 P.2d 988, 993 (Kan. 1975) ("[A] public official … has no right of privacy as to the manner in which he conducts himself in office.").

Defendant had shown beyond mere speculation that they would be in danger now, nearly three years after the fact, that interest can be fully protected with alternatives less restrictive than blanket closure, such as pixilating their faces. *See Pickard*, 733 F.3d at 1304 (endorsing "selectively redacting" truly confidential information as less restrictive alternative to sealing). Under both the constitutional and common law test, the existence of such an alternative means that blanket sealing of the entire video is unjustified.

**B.** **The "Law Enforcement Privilege" Does Not Justify Filing the Video Under Seal.**

Defendant's only other argument is that the video is protected by the "law enforcement privilege" because its disclosure would purportedly reveal the location of cameras in the courtroom and the procedures courtroom personnel followed in the wake of the shooting. (Dkt. 12 p. 9.) That argument is flawed in two respects.

First, as a threshold matter, the "law enforcement privilege" is an "*evidentiary privilege*," *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (emphasis added), which, like other evidentiary privileges, allows a party to refuse to *disclose* information in discovery. That is why every case cited by Defendant deals with the privilege in the context of *refusing* to provide information in response to subpoenas, discovery requests, and the like.[4] None of those cases cites the privilege as a basis to file documents with the court under seal.

---

[4] *See, e.g., Winner*, 641 F.2d at 825 (witness subpoenas for testimony); *Black v. Sheraton Corp. of Am.*, 564 F.2d 531 (D.C. Cir. 1977) (document production requests); *In re City of N.Y.*, 607 F.3d 923 (2d Cir. 2010) (motion to compel); *In re Dep't of Investigation of the City of N.Y.*, 856 F.2d 481 (2d Cir. 1988) (document subpoena); *In re M&L Bus. Mach. Co., Inc. v. Bank of Boulder*, 161 B.R. 689 (D. Colo. 1993) (addressing privilege in context of non-dispositive discovery motion and allowing motion to seal only for submission of documents at issue to the court for decision).

This distinction is significant. There is no tradition of access to "raw discovery materials exchanged among parties, but not filed with the court[.]" *Rosado*, 970 A.2d at 677 (citing *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32-33 (1984)). There is, however, a well-established tradition of public access to documents that *are* filed with the court and which are relevant to an exercise of the court's adjudicative function. Unlike raw discovery materials, "the presumptive right of access to pleadings attaches at the time documents are filed with the court." *Mokhiber v. Davis,* 537 A.2d 1100, 1112 (D.C. Ct. App. 1988); *see also Shane Grp., Inc. v. Blue Cross Blue Shield of MI*, 825 F.3d 299, 305 (6th Cir. 2016) ("Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" (citation omitted)); *Rosado,* 970 A.2d at 621 ("the majority of jurisdictions, and the clear trend of the common law, regardless of whether the courts limit their definition [of judicial documents] to only those documents 'filed' with the court, is to allow access to any document related to the court's adjudicatory function.").

Following this tradition of access, courts have routinely ruled that the public has a right of access to documents filed with the court that are relevant to a decision pending before or made by the court. *See, e.g., Rufer v. Abbott Labs.,* 114 P.3d 1182, 1188 (Wash. 2005) (documents filed with the court "lose their character as the raw fruits of discovery. Such documents may not be kept from public view 'without some overriding interest' requiring secrecy." (citation omitted)); *Pennsylvania v. Upshur,* 924 A.2d 642, 648 (Penn. 2007) ("[A]ny item that is filed with the court as part of the permanent record of a case and relied on in the course of judicial decision-making will be a public judicial record or document."); *Leucadia,* 998 F.2d at 161 ("Numerous other courts have also recognized the principle that the filing of a document gives

rise to a presumptive right of public access."); *Mokhiber,* 537 A.2d at 1112 ("the presumptive right of access extends to all material that becomes germane to a court's ruling, in contrast with discovery material that neither party submits in evince for consideration by the court").

Defendant here is not simply resisting a discovery request for the video. It seeks to file that video with the Court. Of even greater significance, the video is apparently the centerpiece of Defendant's motion to dismiss this case, meaning it will be the basis of a decision by this Court profoundly affecting the "litigants' substantive legal rights." *Pickard*, 733 F.3d at 1303 (citation omitted). That means "the presumption in favor of access is particularly strong." *Apperson*, 642 F. App'x at 899. Defendant is not entitled to a secret litigation of the claims against it. If it wishes to submit the video to the Court, it cannot shield it from public view by reliance on an evidentiary privilege. *See also Gregory v. City of Vallejo*, No. 2:13-cv-320, 2014 WL 4187365, at *2 (E.D. Cal. Aug. 21, 2014) ("To seal documents filed in connection with a dispositive motion, parties must show there are 'compelling reasons' for doing so." (citation omitted)).

Second, even if the law enforcement privilege could justify filing documents with the court under seal, Defendant has not made the type of particularized, specific showing that warrants overcoming the public's paramount right of access. "The law enforcement investigative privilege is 'based primarily on the harm to law enforcement efforts which might arise from public disclosure of … *investigatory files*.'" *Winner*, 641 F.2d at 831 (citation omitted) (emphasis added). It is designed to protect things like secret investigative techniques or undisclosed witnesses. *Id*. It is not a blanket exception that applies to all law enforcement documents, especially to video records of something that occurred in a *public place*.

Nor are the generalized, speculative interests asserted by Defendant the kind that can support application of the privilege. For instance, the assertion that release of the video would reveal the location of cameras in the courtroom (which are already visible), and thus allow members of the Tongan Crips Gang to stage some type of camera-blocking criminal activity inside a courtroom the same way they have done in prison, is fanciful. Similarly, the generic references to "evacuation procedures for judges and court staff" and "positioning of court security personnel" and "the emergency response procedures of court security personnel" (Dkt. 12 p. 9) are entirely unexplained and would apply to *every single video* of an emergency event in a courtroom. They are "merely a restatement of the type of information the privilege is meant to protect." *Coleman v. Cnty. of Suffolk*, 174 F. Supp. 3d 747, 757 (E.D.N.Y. 2016). The Tenth Circuit has rejected those types of generalized assertions as sufficient to overcome the public's right of access to court records:

> Though these matters are unquestionably, in principle, legitimate governmental interests, they are likely to be present to some degree in virtually every case where a member of the public seeks access to law-enforcement informant files. Therefore, lest the common-law presumption of access be rendered a dead letter as to this class of cases, courts cannot justify denying disclosure by endorsing such generalized governmental interests. They must analyze the government's interests in the context of the specific case—with respect to particular documents or categories of documents—and explicitly undergird their conclusions with fact-specific analysis. Absent a particularized analysis of this type, a district court has no sound legal basis for ruling on the sealing question.[5]

*Apperson*, 642 F. App'x at 900. *See also JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose, CO*, 754 F.3d 824, 827 (10th Cir. 2014) ("[A] generalized allusion to confidential information is woefully inadequate to meet JetAway's 'heavy burden.'" (citation

---

[5] Needless to say, the perfunctory proposed Order attached to Defendant's motion does not come anywhere close to meeting these requirements.

omitted)); *Coleman*, 174 F. Supp. 3d at 756 (party invoking law enforcement privilege "may not rely simply on generalized reiterations of the policies underlying the privilege" (citation omitted)).

Weighed against these speculative and generalized assertions is the significant public interest in the video at issue. "Law enforcement officers carry upon their shoulders the cloak of authority to enforce the laws of the state. In order to maintain trust in its police department, the public must be kept fully informed of the activities of its peace officers." *Comm'n on Peace Officer Standards and Training v. Superior Court*, 64 Cal. Rptr. 3d 661, 674 (Cal. 2007) (citation omitted). That interest is "particularly great" when, as here, an officer is involved in shooting a civilian "because such shootings often lead to severe injury or death." *Long Beach Police Officers Ass'n v. City of Long Beach*, 172 Cal. Rptr. 3d 56, 74 (Cal. 2014). Here, the shooting at issue took place in a public courtroom during a public proceeding. The allegations in this case have raised legitimate questions about whether the use of lethal force was justified or whether those granted the power to use that force abused their authority. The video is likely the best, if not the only, way for the public to see what happened and hold those involved accountable for their conduct. The notion that the government is entitled to a secret adjudication of the claims against it, with the critical evidence in this public proceeding withheld from the public itself, is contrary to the public's constitutional and common law right of access, to the rules governing this court, and to the principles of open government that have served this country since its founding.

For these reasons, Defendant has failed to show that there are any compelling interests in releasing the video, at least in redacted form, much less "'countervailing interests [that] heavily

outweigh the public interests in access' to the judicial records." *Pickard*, 733 F.3d at 1303. This Court should reject Defendant's request to file the video under seal.

## **CONCLUSION**

"People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers,* 448 U.S. at 572. For all of the foregoing reasons, the Motion to Seal should be denied.

RESPECTFULLY SUBMITTED this 9th day of December 2016.

                                            PARR BROWN GEE & LOVELESS, P.C.

                                            /s/ David C. Reymann
                                            Jeffrey J. Hunt
                                            David C. Reymann

                                            Attorneys for Proposed Intervenors the Utah Headliners Chapter of the Society of Professional Journalists, the Associated Press, the *Deseret News*, *The Salt Lake Tribune,* KSL-TV, KSL Newsradio, KSL.com, ABC4, KUTV, and Fox 13 KSTU-TV

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 9th day of December 2016, I electronically filed the foregoing **MEDIA INTERVENORS' OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE A VIDEO IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT UNDER SEAL**, which served the following:

>Robert B. Sykes (bob@sykesmcallisterlaw.com)
>Rachel L. Sykes (rachel@sykesmcallisterlaw.com)
>SYKES MCCALLISTER LAW OFFICES, PLLC
>311 South State Street, Suite 240
>Salt Lake City, Utah 84111
>
>Leah Brownlee Taylor (leah.b.taylor@usdoj.gov)
>UNITED STATES DEPARTMENT OF JUSTICE
>P.O. Box 7146
>Washington, D.C. 20044

                                                /s/ David C. Reymann